<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| FANTASTIC SAMS FRANCHISE CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOYNTON WEEKES and GEORGE JACKSON, <br><br> Defendants. | Civ. A. No. 3:21-cv-17733 (GC) (DEA) <br><br> **MEMORANDUM OPINION** |

<u>CASTNER, District Judge</u>

 **THIS MATTER** comes before the Court upon Plaintiff Fantastic Sams Franchise Corporation's ("Plaintiff") Amended Motion for Summary Judgment (the "Motion") pursuant to Federal Rule of Civil Procedure 56.[1]  (*See* Pl.'s Am. Mot. for Summ. J. ("Am. Mot."), ECF No. 21.)  Defendants Boynton Weekes and George Jackson (collectively, "Defendants") opposed (*see* Defs.' Opp'n, ECF No. 22), and Plaintiff replied (*see* Pl.'s Reply, ECF No. 23).  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1.  For the reasons set forth herein, Plaintiff's Motion is **GRANTED**.  Accordingly, summary judgment will be entered for Plaintiff.

---

[1] Plaintiff filed its Amended Motion for Summary Judgment (*see* Pl.'s Am. Mot., ECF No. 21) on the same day as its original Motion for Summary Judgment (*see* Pl.'s Mot. for Summ. J., ECF No. 20).  As the Amended Motion is the operative document, the Court does not further reference the initially filed motion.

## I.    BACKGROUND[2]

This is the parties' second action in federal court in an attempt to resolve their dispute.  On

January 28, 2016, Plaintiff filed an action before this Court, "alleging that Defendants breached

the parties' salon license agreement by prematurely abandoning their franchised Fantastic Sams®

salon."   (Pl.'s Statement of Undisputed Facts ("SUF") ¶ 8, ECF No. 21-1; Defs.' Responsive

Statement of Undisputed Facts ("RSUF")[3] ¶ 8,[4] ECF No. 22-2; *Fantastic Sams Franchise Corp.*

---

[2] On a motion for summary judgment, the Court "view[s] all inferences drawn from the underlying facts in the light most favorable to the nonmoving party."  *Baker v. Sun Life & Health Ins. Co.*, 644 F. App'x 164, 165 (3d Cir. 2016) (citing *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013)).

[3] Some of Defendants' statements are nonresponsive pursuant to Local Civil Rule 56.1.  The rule provides, in relevant part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

L. Civ. R. 56.1(a).  Though the local rule provides that any material fact not disputed shall be deemed undisputed, the Third Circuit has encouraged district courts to proceed with caution. Merely nonresponsive statements may not be enough to deem a fact undisputed, such that it is able to support an award of summary judgment. *See Boswell v. Eoon*, 452 F. App'x 107, 111-12 (3d Cir. 2011) (applauding collected district court decisions that had declined to enforce strict compliance with the local rule).  Following this guidance, the Court will presume these facts disputed unless demonstrated by the parties' record evidentiary submissions. *See id.* at 112 (citing with approval *Digiacomo v. Prudential Ins. Co. of Am.*, 501 F. Supp. 2d 626, 629 n.4 (D.N.J. 2007) ("Because [the non-movant] did not oppose the [movant's statement of material facts, the Court will presume that the facts are true unless they are controverted by the evidence in the record.")).

[4] Defendants' statement is nonresponsive: "Defendants respectfully refer[] the [C]ourt to the Complaint, the text of which speaks for itself."  (*See* Defs.' RSUF ¶ 8.)

*v. Weekes, et al.*, No. 16-506 (MLC) (DEA), filed Jan. 28, 2016 (D.N.J.), *see* Compl., ECF No. 1 (the "Original Action").)  That action was resolved by way of settlement between the parties.

On September 28, 2021, Plaintiff, a corporation, filed the instant suit against Defendants, seeking a consent judgment pursuant to the terms of the parties' Settlement Agreement entered in the Original Action on April 15, 2017.  (*See generally* Pl.'s Compl. ¶¶ 1-3, ECF No. 1; *see* Settlement Agreement ¶ 3, Pl.'s Compl. Ex. A, ECF No. 1; *see* Defs.' Answer ¶¶ 1-3, ECF No. 6; *see* Pl.'s SUF ¶ 4; *see* Decl. of James Costigan in Supp. of Pl.'s Mot. for Summ. J. ("Costigan Decl.") ¶¶ 4-5, ECF No. 21-2; *see* Settlement Agreement ¶ 3, Costigan Decl. Ex. A, ECF No. 21-3; *see* Defs.' RSUF ¶ 4[5].)  The Settlement Agreement provides, in material part, that Plaintiff's promise to dismiss with prejudice all claims in the Original Action in exchange for Defendants' payment of $85,000.00 (the "Settlement Amount"), as well as for the termination of the prior contract.  (*See* Pl.'s SUF ¶ 9; *see* Defs.' RSUF ¶ 9[6]; *see* Settlement Agreement ¶¶ 1-2, 4, Pl.'s Compl. Ex. A; *see* Settlement Agreement ¶¶ 1-2, 4, Costigan Decl. Ex. A.)

The terms of payment specifically provide that Defendants promise, "[c]ommencing on May 1, 2017, and continuing each first of the 47 successive months thereafter," to remit "forty-eight (48) equal monthly installments of principal in the amount of **TWELVE HUNDRED FIFTY DOLLARS ($1,250.00)** each, and one (1) final monthly installment of principal in the amount of **TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)** due on the first of the forty-ninth (49) successive month."  (Settlement Agreement ¶ 2, Pl.'s Compl. Ex. A (emphasis in

---

[5] Defendants' statement is nonresponsive: "Disputed.  This paragraph contains characterizations and legal conclusions, not material assertions of fact or proper expert opinion."  (*See* Defs.' RSUF ¶ 4.)

[6] Defendants' statement is nonresponsive and incomplete: "Defendants respectfully refer[] the [C]ourt to the [sic], the text of which speaks for itself."  (*See* Defs.' RSUF ¶ 9.)

original); Settlement Agreement ¶ 2, Costigan Decl. Ex. A (emphasis in original).)  In the event of default, the Settlement Agreement enables Plaintiff to "immediately, and without providing [Defendants] with an opportunity to cure, obtain an entry of judgment with the United States District Court for the District of New Jersey (the "Court") in the amount of $184,575.09, less any credits for payments made in accordance with this Agreement (the "Consent Judgment")." (Settlement Agreement ¶ 3, Pl.'s Compl. Ex. A; Settlement Agreement ¶ 3, Costigan Decl. Ex. A.) The provision further concedes that "[Defendants] waive any right to contest any entry of judgment sought under this Section." (*Id.*)

On April 24, 2017, Plaintiff dismissed the Original Action (*see* No. 16-506, ECF No. 23 (dismissing claims with prejudice)).  (*See* Pl.'s SUF ¶ 11; *see* Defs.' RSUF ¶ 11.)  Defendants timely paid the first three monthly installments of $1,250.00 on May 15, 2017,  June 1, 2017, and July 1, 2017.  (*See* Pl.'s SUF ¶¶ 12-13; *see* Defs.' RSUF ¶¶ 12-13.)  "Defendants missed the monthly installment that was due and payable on August 1, 2017." (Pl.'s SUF ¶ 14; *see* Defs.' RSUF ¶ 14.)  Following further communication, Defendants paid the delinquent sum due August 1, 2017 via counsel, and timely wired the September 1, 2017 amount due.  (*See* Pl.'s SUF ¶¶ 17-18, 20; *see* Defs.' RSUF ¶¶ 17-18, 20.)  Plaintiff collected Defendants' October 1, 2017 payment due via electronic removal from their previously designated bank account.  (*See* Pl.'s SUF ¶ 21; *see* Defs.' RSUF ¶ 21.)  On October 1, 2017, Defendants sent an email to Plaintiff, stating:

> It is our regret to inform you that at this time, we are not able to
> fulfill the obligation of our monthly payment agreement.  When we
> signed the agreement, we had expectations to fulfill the agreement
> in full.  Due to unforeseen income circumstances, we will not be
> able to make the full monthly payments agreed upon.

(Defs.' email entitled "FSC Agreement," timestamped 9:51 PM EDT, Costigan Decl. Ex. F, ECF

No. 21-8; *see* Pl.'s SUF ¶ 22; *see* Defs.' RSUF ¶ 22[7].)  On October 2, 2017, Plaintiff's counsel

"emailed [D]efendants' counsel inquiring as to whether [D]efendants intended to file for

bankruptcy." (Pl.'s SUF ¶ 23; Defs.' RSUF ¶ 23; *see* Pl.'s counsel's email replying to Defs.' email

entitled "FSC Agreement," timestamped 9:26 AM EDT, Costigan Decl. Ex. F.)

Plaintiff asserts that Defendants "have not paid to [Plaintiff] the monthly installment due

on November 1, 2017.  All remaining amounts owed under the [Settlement Agreement], totaling

$77,500, have become due and payable under the terms of the Settlement Agreement.  Defendants

have failed and refuse to pay this amount to [Plaintiff]." (Pl.'s SUF ¶ 25 (citing Settlement

Agreement ¶ 2, Costigan Decl. Ex. A; Payment Tracking Chart, Costigan Decl. Ex. B, ECF No.

21-4; Costigan Decl. ¶ 23 (reciting identical averment to Plaintiff's SUF ¶ 25).)  Defendants

dispute this, stating "Defendants have never refused to make any payments to Plaintiff." (Defs.'

RSUF ¶ 25.)

## II.  **LEGAL STANDARD**

Under the Federal Rules, a motion for summary judgment is appropriately granted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).  Such entitlement will properly result in entry

of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material

---

[7] Plaintiff states that: "On October 1, 2017, [D]efendants emailed [Plaintiff's] counsel stating that they would not make the monthly payments agreed upon." (Pl.'s SUF ¶ 22.)  Defendants dispute Plaintiff's statement "as [a] mischaracterization of Defendants' communication." (Defs.' RSUF ¶ 22.)  Defendants "respectfully refer the court to the electronic mail cited, the text of which speaks for itself, and denies all characterization, opinion, legal conclusion, or the truth of the statements therein, which is a matter of credibility for the jury to decide." (*Id.*)

fact[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  The

central inquiry is "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

"A motion for summary judgment will not be defeated by the 'mere existence' of some

disputed facts, but will be denied when there is a genuine [dispute] of material fact."  *Am. Eagle*

*Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson*, 477 U.S. at

247-48).  "As to materiality, the substantive law will identify which facts are material."  *Anderson*,

477 U.S. at 248.  A "material" fact is defined as one that "might affect the outcome of the suit

under the governing law."  *Id.*  A dispute about a material fact is "genuine," if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The dispute is

not genuine if it merely involves 'some metaphysical doubt as to the material facts.'"  *Devito v.*

*Zucker, Goldberg & Ackerman, LLC*, 908 F. Supp. 2d 564, 572 (D.N.J. 2012) (quoting *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "Any dispute over a fact which

is irrelevant or unnecessary will not preclude a grant of summary judgment."  *Connors v. Fawn*

*Min. Corp.*, 30 F.3d 483, 489 (3d Cir. 1994) (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden to show entitlement to summary judgment—the

burden does not include a requirement "to produce evidence showing the absence of a genuine

[dispute] of material fact, even with respect to an issue on which the nonmoving party bears the

burden of proof."  *Celotex Corp.*, 477 U.S. at 325.  "[T]he burden on the moving party may be

discharged by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case."  *Id.*

To survive the moving party's assertion that summary judgment is proper, the nonmoving party must respond by identifying "affirmative evidence that contradict[s that] offered by the moving party." *Charney v. City of Wildwood*, 732 F. Supp. 2d 448, 452 (D.N.J. 2010).  Though the Court must draw all inferences in the light most favorable to the nonmoving party, "the non-moving party must provide admissible evidence containing 'specific facts showing that there is a genuine [dispute] for trial.'" *Pa. Prot. & Advoc., Inc. v. Pa. Dep't of Pub. Welfare*, 402 F.3d 374, 379 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(e)).  "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate" such facts showing the existence of a genuine dispute, though the evidence produced need not be "in a form that would be admissible at trial." *Celotex*, 477 U.S. at 324.

To demonstrate a genuine dispute, the nonmoving party "'must present more than just bare assertions, conclusory allegations or suspicions.'" *Williams v. Off. of Dist. Att'y Erie Cnty.*, 751 F. App'x 196, 199 (3d Cir. 2018) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc)).  "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters*, 584 F.3d at 581 (quoting *Anderson*, 477 U.S. at 248-49).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is 'to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, [the formality of] a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).

### III.   **DISCUSSION**

Plaintiff advances two arguments in support of its position that summary judgment is warranted.  First, Plaintiff argues that "there is no dispute that [D]efendants materially breached the [Settlement Agreement] resulting in damages for an undisputed amount[.]" (*see* Pl.'s Moving Br. 7-9, ECF No. 21-10.)  Second, Plaintiffs argue that Defendants' assertion of the affirmative defense of laches does not relieve them from culpability for breach of the Settlement Agreement. (*See id.* at 9-11.)  Defendants respond that they have not breached the agreement, because under the doctrines of express and implied waiver, "Defendants advised Plaintiff that [they] had unforeseen circumstances that affected their ability to make payments and Plaintiff never advised Defendants of any alleged breach thus waiving any argument against a breach." (Defs.' Opp'n Br. 4, ECF No. 22.)  Defendants state that "Plaintiff waived provisions of the contract by failing to contact Defendants after Plaintiff was advised about the unforeseen circumstances suffered by Defendants that affected their ability to make payments to Plaintiff." (*Id.* at 5.)  Defendants also assert that because Plaintiff delayed filing the Complaint until September 2021, Plaintiff intended "to cause detriment to Defendants and as such, Plaintiff's claim must fail due to laches." (*Id.*)

In Reply, Plaintiff counters that "Defendants concede that there are no issues of material fact in dispute on any of the breach of contract elements for trial[,]" because they "cite no record evidence to create a question of fact on any element of [Plaintiff's] breach of contract claim." (Pl.'s Reply Br. 3, ECF No. 23 (citing *Yellin & Hyman, P.C. v. James N. Ellis & Assocs., P.C.*, No. 982176A, 2001 WL 755851, at *3 (Mass. Super. Ct. May 16, 2001)).)  Additionally, Plaintiff

contends that it was not required to contact Defendants to notify them of its intent to enforce the Settlement Agreement (*see id.* at 4), and that, under Massachusetts breach of contract law, "as long as its complaint was timely filed under the statute of limitations (which it was), [[P]laintiff's] breach of contract claim is not subject to waiver[,]" (*id.* at 4-5 (quoting *Specialty Materials, Inc. v. Highland Power Corp.*, No. 19-P-813, 2020 WL 4047851, at *3 (Mass. App. Ct. 2020)). Regarding the application of laches, Plaintiff states that "[l]aches remains an equitable defense that is unavailable in defense to [Plaintiff's] purely legal claim[,]" (*id.* at 5), and that regardless, Defendants have failed to adduce evidence to show satisfaction of the standard to justify application of the equitable doctrine (*see id.* at 5-6).

### A.      Breach of the Parties' Settlement Agreement

As Plaintiff identifies, pursuant to the Settlement Agreement, the instant matter is governed by Massachusetts law.  (*See* Pl.'s Moving Br. 7 n.1 ("The subject [Settlement Agreement] contains a Massachusetts choice-of-law provision."); *see* Settlement Agreement ¶ 12, Costigan Decl. Ex. A; *see also* Settlement Agreement ¶ 12, Compl. Ex. A.)  The Settlement Agreement explicitly provides that "[t]his Agreement will be governed by and construed under the laws of the Commonwealth of Massachusetts, without giving effect to principles of conflicts of laws."  (*See* Settlement Agreement ¶ 12, Costigan Decl. Ex. A; *see also* Settlement Agreement ¶ 12, Compl. Ex. A.)  Pursuant to Massachusetts state law:

> To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract, and the plaintiff suffered harm as a result.

*Bulwer v. Mount Auburn Hosp.*, 46 N.E.3d 24, 39 (Mass. 2016) (citing *Singarella v. Boston*, 173 N.E.2d 290, 291 (Mass. 1961)).

Here, despite Defendants' arguments to the contrary, it is undisputed that Defendants breached the Settlement Agreement when they failed to submit timely payment(s) in satisfaction of their obligation.  It is undisputed that the Settlement Agreement constitutes an agreement between the parties, supported by a bargained for exchange. (*See* Pl.'s SUF ¶ 9; Defs.' RSUF ¶ 9[8]; Settlement Agreement ¶¶ 1-2, 4, Pl.'s Compl. Ex. A; Settlement Agreement ¶¶ 1-2, 4, Costigan Decl. Ex. A.)  It is undisputed that Plaintiff performed its obligations by dismissing the Original Action.  (*See* Pl.'s SUF ¶ 11; *see* Defs.' RSUF ¶ 11.)  The record reflects that Defendants have not complied with the Settlement Agreement's material terms, because on October 1, 2017, they submitted notice in writing that they would not be able to make future payments in full, (*see* Defs.' Counterstatemet of Material Undisputed Facts ¶ 1, ECF No. 22-1 (citing Email Exchange, Costigan Decl. Ex. F); *see* Pl.'s Resp. to Defs.' Counterstatement of Material Undisputed Facts ¶ 1, ECF No. 23-1), and that Defendants have not submitted a payment to Plaintiff since Plaintiff obtained the October 1, 2017 payment by withdrawing the funds directly from Defendants' selected account (*see* Pl.'s SUF ¶ 25; *see* Defs.' RSUF ¶ 25[9].)  Defendants have failed to produce admissible evidence—indeed, Defendants have not produced any evidence at all—"containing

---

[8] Defendants' nonresponsive and incomplete statement that "Defendants respectfully refer[] the [C]ourt to the [sic] , the text of which speaks for itself[,]" (*see* Defs.' RSUF ¶ 9), appears to direct the Court to the text of the Settlement Agreement, which demonstrates the absence of a dispute about the execution of the signed writing, (*see* Settlement Agreement, Pl.'s Compl. Ex. A; *see* Settlement Agreement, Costigan Decl. Ex. A).

[9] While Defendants dispute Plaintiff's statement that Defendants have failed to make any payments since October 1, 2017, stating that "Defendants have never refused to make any payments to Plaintiff," (*see* Defs.' RSUF ¶ 25), Defendants' assertion is directly contradicted by Plaintiff's submissions (*see* Payment Tracking Chart, Costigan Decl. Ex. B & Defs.' email entitled "FSC Agreement," timestamped 9:51 PM EDT, Costigan Decl. Ex. F).  By way of evidence, Defendants submit the parties' respective First Set of Interrogatories, examination of which does not further illuminate or otherwise provide evidence to support a genuine dispute of Plaintiff's statement.

'specific facts showing that there is a genuine [dispute] for trial[,]'" *Pa. Prot. & Advoc., Inc.*, 402 F.3d at 379 (quoting Fed. R. Civ. P. 56(e)), on any of the elements of the breach of contract claim.

Moreover, the Settlement Agreement defines what constitutes default by Defendants. (*See* Settlement Agreement ¶ 2, Pl.'s Compl. Ex. A; *see* Settlement Agreement ¶ 2, Costigan Decl. Ex. A.) Under the provision, "[t]he occurrence of any one or more of the following events will constitute a default by [Defendants,]" specifically:

> (i) [Defendants] fail to pay when due any amount payable under this Section, including, without limitation, issuing a check that is not honored by the applicable bank ("***Payment Default***"), and fail to cure such Payment Default within five (5) days of the due date of the payment at issue, or (ii) [Defendants] commit two (2) or more Payment Defaults during any six (6) month period.

(*See Id.* (emphasis in original).) Here, Defendants clearly failed to make payments subsequent to October 1, 2017. Moreover, Defendants failed to timely transmit the August 1, 2017 monthly installment (*see* Pl's SUF ¶ 14; *see* Defs.' RSUF ¶ 14), and in October 2017 informed Plaintiff that they did not intend to make future payments, both of which fall within the six-month window triggering breach of the Settlement Agreement per its terms. (*See* Settlement Agreement ¶ 2, Pl.'s Compl. Ex. A; *see* Settlement Agreement ¶ 2, Costigan Decl. Ex. A.) "Plaintiff received a check from [D]efendants for the August 1, 2017 monthly installment on August 15, 2017" more than five days after the due date. (*See* Pl.'s SUF ¶ 18; *see* Defs.' RSUF ¶ 18.) The Settlement Agreement expressly permits Plaintiff to "immediately, and without providing [Defendants] with any opportunity to cure, obtain an entry of judgment" with this Court for the remainder of the outstanding sum owed. (*See* Settlement Agreement ¶ 3, Pl.'s Compl. Ex. A; *see* Settlement Agreement ¶ 3, Costigan Decl. Ex. A.)

### B.      Express and Implied Waiver

"Under the common law of contracts, waiver is the 'intentional relinquishment of a known right." *BourgeoisWhite, LLP v. Sterling Lion, LLC*, 71 N.E.3d 171, 176 (Mass. App. Ct. 2017) (citing *Dynamic Mach. Works, Inc. v. Mach. & Elec. Consultants, Inc.*, 831 N.E.2d 875, 879 (Mass. 2005)). "Waiver may be express or 'inferred from a party's conduct and the surrounding circumstances.'" *id.* (quoting *id.* at 880), "where the conduct is 'consistent with and indicative of an intent to relinquish voluntarily a particular right [such] that no other reasonable explanation of [the] conduct is possible." *KACT, Inc. v. Rubin*, 819 N.E.2d 610, 616 (Mass. App. Ct. 2004) (quoting *Att'y Gen. v. Indus. Nat'l Bank*, 404 N.E.2d 1215, 1218 n.4 (Mass. 1980)). "[W]here waiver is not explicit, it must be premised on 'clear, decisive and unequivocal conduct[.]" *Id.* (quoting *Glynn v. Gloucester*, 401 N.E.2d 886, 892 (Mass. App. Ct. 1980)). "Whether waiver exists is a question of fact," *id.* (citing *Am. Oil Co. v. Katsikas*, 300 N.E.2d 204, 206 (Mass. App. Ct. 1973)), and waiver "must be proved by the party relying upon it." *Indus. Nat'l Bank*, 404 N.E.2d at 1218 n.4 (quoting *Buffum v. Chase Nat'l Bank*, 192 F.2d 58, 60-61 (7th Cir. 1951), *cert. denied*, 342 U.S. 944 (1952)).

Here, Defendants have not provided any evidence to show that Plaintiff unequivocally intended to waive its rights under the Settlement Agreement. Defendants' assertion that "Plaintiff intentionally waived its right to enforce the [Settlement Agreement] because it failed to timely demand that Defendants comply with the [Settlement Agreement,]" by "waiting more than three years to send a properly addressed demand letter," does not comport with the legal standard as provided by Massachusetts state courts. (*See* Defs.' Opp'n Br. 5.) Defendants have failed to substantiate their theory with evidence that Plaintiff unequivocally intended to forfeit its rights such that "no other reasonable explanation of [the] conduct is possible." *KACT, Inc.*, 819 N.E.2d

at 616 (quoting *Indus. Nat'l Bank*, 404 N.E.2d at 1218 n.4).  Without proffering some evidence

that Plaintiff expressly or affirmatively assented to waiver of its rights, or that its dilatory conduct

"clearly, decisively, and unequivocally established its intent to waive [] its right to timely claim a

breach of the contract," *Specialty Materials, Inc.*, 2020 WL 4047851, at *3, Defendants are unable

to show a genuine dispute of fact sufficient to sustain the affirmative defense of waiver.

## C.      Doctrine of Laches

Finally, Defendants assert that Plaintiff's delay in filing this action requires the application

of the doctrine of laches to preclude its recovery under the Settlement Agreement.  (*See* Defs.'

Opp'n Br. 5-6.)  "Laches is available, if affirmatively pleaded, as a defense to a claim that is

equitable in nature."  *Srebnick v. Lo-Law Transit Mgmt., Inc.*, 557 N.E.2d 81, 85 (Mass. App. Ct.

1990) (collecting cases).  "It is not generally available as a defense to a legal claim."  *Id.* (affirming

ruling of trial court that "the laches defense was out of order" because the plaintiff's tort claim was

"legal, not equitable, in nature").   "As long as there is no statute of limitations problem,

unreasonable delay in pressing a legal claim does not, as a matter of substantive law, constitute

laches."  *Id.* (collecting cases).  "Moreover, for this defense to exist, the delay must be not only

unreasonable, but also prejudicial."  *Delorenzo v. Tzokos*, No. 9712, 2001 WL 920700, at *2

(Mass. App. Div. Aug. 8, 2001).

Here, Plaintiff's claim for breach of the Settlement Agreement is similarly legal, and not

equitable.  There is no statute of limitations issue arising from Plaintiff's delay.  *See Nortek, Inc.*

*v. Liberty Mut. Ins. Co.*, 843 N.E.2d 706, 711 (Mass. App. Ct. 2006) ("A cause of action for breach

of contract accrues at the time of breach" and "must be brought within six years after the cause of

action accrues."). Under the terms of the Settlement Agreement, the breach occurred upon

13

Defendants' actual default on November 1, 2017, following Defendants' email communication to Plaintiff, (*see* Pl.'s SUF ¶ 24; *see* Defs.' RSUF ¶ 24[10]).

Defendants' ultimate argument is that Plaintiff's delay resulted in prejudice.  Defendants argue that "despite [its] awareness of Defendants' changed circumstances, Plaintiff failed to send any response to Defendants' October 1, 2017 communication to Defendants in compliance with the notice provision of the Settlement Agreement and never made a demand for payment for almost three and a half years, which also included a worldwide pandemic." (Defs.' Opp'n Br. 6.)  "As a result of the lengthy delay between the date of the alleged default and the filing of the instant action, Defendants' financial situation has become worse." (*Id.*)  The Settlement Agreement's notice provision merely provides the contact addresses for the parties to the contract, and explicitly provides that the information is to be used in connection with "[a]ny notices required under the Settlement Agreement." (*See* Settlement Agreement ¶ 13, Pl.'s Compl. Ex. A; *see* Settlement Agreement ¶ 13, Costigan Decl. Ex. A.)  Nothing in the Settlement Agreement requires notice to Defendants before Plaintiff initiates proceedings to enforce its rights—in fact, the Settlement Agreement expressly dictates otherwise. (*See* Settlement Agreement ¶ 3, Pl.'s Compl. Ex. A; *see* Settlement Agreement ¶ 3, Costigan Decl. Ex. A (permitting Plaintiff to "immediately and without providing [Defendants] with any opportunity to cure, obtain an entry of judgment" for the outstanding amount.)  Plaintiff's vindication of its rights in accord with the parties' agreement does not result in legal prejudice to Defendants, no matter how dire their financial situation has

---

[10] Defendants "respectfully refer the [C]ourt to the document cited, the text of which speaks for itself, and denies all characterization, opinion, [and] legal conclusion of counsel." (*See* Defs.' RSUF ¶ 24.)  The document cited, that "speaks for itself," is Plaintiff's Payment Tracking Chart, which reflects that Plaintiff attempted to withdraw the funds from Defendants' account on November 1, 2017, and again on November 2, 2017, but was unable to recover the monies owed. (*See* Payment Tracking Chart, Costigan Decl. Ex. B.)

become.  Defendants will be precluded from the impermissible use of an equitable affirmative

defense as a shield against the maintenance of Plaintiff's legal cause of action for breach of

contract.

### D.      Award of Interest on the Judgment

The Court briefly examines the propriety of the application of pre-judgment interest to the

amount awarded Plaintiff,[11] in accord with the parties' Settlement Agreement.  (*See* Compl. Ex.

A, ECF No. 1.)  "For breach of contract actions, 'the law of the forum state—in this case, New

Jersey—applies to questions of process, of which the award of interest is one."  *Munich Reins.*

*Am., Inc. v. Tower Ins. Co. of New York*, No. 09-2598, 2012 WL 1018799, at *1 (D.N.J. Mar. 26,

2012) (quoting *Gleason v. Norwest Mortg., Inc.*, 253 F. App'x 198, 203-04 (3d Cir. 2007)).

Additionally, "federal courts in diversity cases should apply state law with respect to prejudgment

interest."  *Feit v. Great-W. Life & Annuity Ins. Co.*, 460 F. Supp. 2d 646, 647 (D.N.J. 2006)

(quoting *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982)).   Whether to grant a party's request

for pre-judgment interest is reserved to the discretion of the Court, *see Cooney v. Ritter*, 939 F.2d

81, 89 (3d Cir. 1991) (quoting *Meshinsky v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1070 (N.J.

1988)), as is the rate by which pre-judgment interest is calculated, *see Munich Reins. Am. Co.*,

2012 WL 1018799, at *2 (quoting *Litton Indus., Inc. v. IMO Indus., Inc.*, 932 A.2d 420, 430 (N.J.

2009)).

The New Jersey Supreme Court has affirmed a reviewing court's use of New Jersey Court

Rule 4:42-11 "as a guide" in a contract case, *see Litton*, 932 A.2d at 431.  According to the Rule,

---

[11] Pursuant to the Settlement Agreement, Defendants agreed to a total payment of $85,000.  *See* Pl.'s SUF ¶ 9; *see* Defs.' RSUF ¶ 9.  Defendants are entitled to a credit of $7,500 for the six payments that were made from May 2017 to October 2017, which leaves $77,500 to be awarded to Plaintiff pursuant to the Settlement Agreement.

pre-judgment interest is calculated by using the stated prevailing rate, *i.e.*, "the annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury, but the rate shall be not less than 0.25%." *See* N.J. Ct. R. 4:42-11(a)(ii). The Rule also states that for judgments that exceed the monetary limit of the Special Civil Part (the monetary limit of the Special Civil Part is $15,000, *see Adkins v. Sogliuzzo*, 820 F. App'x 146, 151 (3d Cir. 2020)), at the time of entry the rate provided by the State Cash Management accounts shall be increased by 2%. *See id.* § (a)(iii). Finally, the rule provides for the application of simple interest. *See Munich Reins. Am. Co.*, 2012 WL 1018799, at *6 n.6.

The annual rate of interest listed for the year 2021 is 1.5% and for years 2022 and 2023, 0.25%. *See* N.J. Ct. R. 4:42-11 (publisher's note). The rates will be adjusted by adding the 2% for corresponding rates of 3.5% for 2021 and 2.25% for 2022 and 2023. Here, the accrual date from the institution of the action (September 28, 2021) is the latter of the options provided by Rule 4:42-11(b), and best balances the equities between both parties. *See Munich Reins. Am. Co.*, 2012 WL 1018799, at *5. Based on these rates, Plaintiff is entitled to pre-judgment interest in the amount of $698.56 for 2021, $1,743.75 for 2022 and $410.86 for 2023, for a total of $2,853.17 in pre-judgment interest.

## IV.   <u>CONCLUSION</u>

The parties voluntarily entered into a contract to effectuate resolution of Plaintiff's claims in the Original Action. Defendants materially breached the contract when they entered into default on November 1, 2017. The terms of the Settlement Agreement specifically entitle Plaintiff to a consent judgment in the event of Defendants' default. Defendants explicitly waived any and all

rights to contest Plaintiff's pursuit of a consent judgment in the event of default, as expressly provided within the Settlement Agreement.  For the foregoing reasons, and other good cause shown, Plaintiff's Motion for Summary Judgment is **GRANTED**.  An appropriate Order follows.

Dated: March 28, 2023

/s/*Georgette Castner*

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**